IN THE UNITED STATES DISTRICT COURT
                   FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


DALE LEE MORRIS,                    )
                                    )
              Plaintiff,             )
                                    )
         v.                         )        1:09CV0679
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of Social       )
Security,[1]                        )
                                    )
              Defendant.            )


            **MEMORANDUM OPINION AND RECOMMENDATION**
                **OF UNITED STATES MAGISTRATE JUDGE**

     Plaintiff, Dale Lee Morris, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  The Court has before it the administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 9, 14).  For the reasons that follow, the Court should enter judgment for Plaintiff and should remand this matter for an award of benefits.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution as Defendant, pursuant to Federal Rule of Civil Procedure 25(d).

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI, alleging a disability onset date of April 8, 2006. (Tr. 128-36.) Upon denial of the applications initially and upon reconsideration (Tr. 76-79), Plaintiff requested and received a hearing de novo before an Administrative Law Judge ("ALJ"), at which Plaintiff, his representative, and a vocational expert ("VE") appeared. (Tr. 21-55.) The ALJ then ruled Plaintiff not disabled under the Act. (Tr. 6-20.) The Appeals Council subsequently denied Plaintiff's request for review (Tr. 1-3), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since April 8, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: disorder of the back, borderline intellectual functioning, fibromyalgia and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
>
> . . . .

> 5. . . . [Plaintiff] has the residual functional capacity to perform sedentary work involving the lifting and carrying of fifteen pounds. [Plaintiff] can alternate between sitting one hour and standing thirty minutes. He can walk for 100 yards. Moreover, [Plaintiff] is limited to work involving simple, routine and repetitive tasks at a non-production pace.

(Tr. 11-14.)

The ALJ further found that Plaintiff could not do his past relevant work (Tr. 18), but that, based on his residual functional capacity ("RFC"), age, education, work experience, and the VE's testimony, Plaintiff could "perform a significant number of jobs in the national economy" (Tr. 19). Accordingly, the ALJ ruled that Plaintiff did not suffer from a "disability" under the Act from the alleged onset date through the decision date. (Tr. 20.)

## **DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [that] review . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

3

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

That sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding against the claimant at any of several points along the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] RFC measures "the most a claimant can do despite [any] limitations." Hines, 453 F.3d at 562 (citing regulations requiring RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

### **Listing 12.05C**

Plaintiff argues that, at step three, the ALJ applied incorrect legal standards in making, and substantial evidence fails to support, the finding that Plaintiff does not meet the mental retardation listing. (Docket Entry 10 at 7-15.) Defendant

---

[5] A claimant thus can establish disability under the Act via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

contends otherwise. (Docket Entry 15 at 6-9.) The Court should rule in Plaintiff's favor on this issue.[6]

The mental retardation listing provides in relevant part:

12.05 *Mental retardation*: Mental retardation refers to <u>significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period</u>; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

C. <u>A valid verbal, performance, or full scale IQ of 60 through 70</u> and <u>a physical or other mental impairment imposing an additional and significant work-related limitation of function</u> . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added).

Accordingly, a claimant can meet Listing 12.05C by establishing:

1) "a showing of deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22 (Prong 1)," <u>Hancock v. Astrue</u>, 667 F.3d 470, 473 (4th Cir. 2012) (internal quotation marks omitted);

2) "a valid verbal, performance, or full scale IQ of 60 through 70 (Prong 2)," <u>id.</u> (internal quotation marks omitted); and

---

[6] The Court thus need not reach Plaintiff's alternative challenge to the ALJ's formulation of the RFC (<u>see</u> Docket Entry 10 at 15-17).

8

3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function (Prong 3)," id. (internal quotation marks omitted).

In this case, the ALJ acknowledged that the record reflected "a Verbal IQ score of 66 . . . and a Full Scale IQ score of 69, which placed [Plaintiff] in the mild mental retardation range of intellectual functioning." (Tr. 14.) The ALJ did not deem invalid those Verbal and Full Scale IQ scores of 66 and 69, respectively. (See Tr. 14.) Nor, in her brief before this Court, has Defendant challenged the validity of those scores. (See Docket Entry 15 at 6-9.) Plaintiff thus satisfied Listing 12.05C's Prong 2. See Hancock, 667 F.3d at 473 (internal quotation marks omitted).

As to Prong 3 of Listing 12.05C, although the ALJ noted its requirement of "a physical or other mental impairment imposing additional and significant work related limitations" (Tr. 14), the ALJ did not make an explicit finding on that subject at step three (see id.). However, the ALJ did find (at step two) that, in addition to an intellectual impairment, Plaintiff also suffered from three other severe impairments: "disorder of the back, . . . fibromyalgia and depression." (Tr. 11.) Further, in formulating Plaintiff's RFC in light of his back disorder and fibromyalgia, the ALJ limited Plaintiff to only "sedentary work involving lifting and carrying of fifteen pounds" (Tr. 14), with further restrictions of "alternat[ing] between sitting one hour and standing thirty minutes

9

. . . [and of] walk[ing] one hundred yards" (id.). Additionally, after discussing Plaintiff's depression, the ALJ concluded that Plaintiff "is unable to perform work which is of high stress and is precluded from work involving complex or detailed task . . . ." (Tr. 17.) Finally, based on the adopted RFC, the ALJ ruled at step four that Plaintiff could not return to his past work. (Tr. 18.)

Defendant does not contend that the foregoing findings fall short of the standard in Prong 3 of Listing 12.05C (see Docket Entry 15 at 6-9) and controlling authority would preclude any such contention, see Flowers v. United States Dep't of Health & Human Servs., 904 F.2d 211, 214 (4th Cir. 1990) ("In this circuit, we follow the rule that if a claimant cannot return to his past relevant work, he has established a work-related limitation of function which meets the requirements of § 12.05(C)."); Wallace v. Astrue, No. 5:09CV359FL, 2010 WL 2520084, at *3 (E.D.N.C. June 21, 2010) (unpublished) ("[T]he 'work-related limitation of function' requirement of § 12.05C is satisfied where a claimant is found to have a 'severe impairment' at step two of the five-part analysis." (citing, inter alia, Luckey v. United States Dep't of Health & Human Servs., 890 F.2d 666, 669 (4th Cir. 1989))). As a result, the Court should conclude that Plaintiff established "a physical or other mental impairment imposing an additional and significant work-related limitation of function (Prong 3)," Hancock, 667 F.3d at 473 (internal quotation marks omitted).

The question thus becomes whether the ALJ reversibly erred by failing to rule that Plaintiff satisfied Prong 1 of Listing 12.05C, which requires a showing of "deficits in adaptive functioning initially manifested . . . before age 22," id. (internal quotation marks omitted). On that subject, the ALJ stated as follows:

> I acknowledge [Plaintiff's] testimony that he is <u>unable to read</u> and <u>was in special education</u>, while in school. However, despite [Plaintiff's] difficulty in school, he <u>was able to work productively for many years. Even more significantly, there was no definitive information to confirm a long term history of mental retardation, no evidence which supports onset of mental retardation before age 22 and the record does not contain a diagnosis from a physician or psychologist that [Plaintiff] indeed was mentally retarded.</u>
>
> Therefore, I find that [Plaintiff] does not meet the requirements of Section 12.05 of the Listing[s] . . . .

(Tr. 14 (emphasis added).)

The Fourth Circuit has adopted the position that a claimant's "low IQ manifested itself in deficits in [the claimant's] adaptive behavior before age 22 . . . [where] there is no evidence that [the claimant's] IQ had changed, and [there is] evidence that [the claimant] could barely read or write . . . ." Luckey, 890 F.2d at 668.[7] Here, the ALJ accepted that Plaintiff possessed a low IQ

---

[7] "Listing 12.05C has been amended since Luckey was decided. . . . [However,] deficits in adaptive functioning prior to age 22 have always been an important aspect of the § 12.05C inquiry. In fact, the Luckey panel defined its first issue as 'whether [the plaintiff's] low IQ manifested itself in deficits in his adaptive behavior before age 22.' Luckey, 890 F.2d at 668. . . . Therefore, Luckey is still authoritative." Salmons v. Astrue, No. 5:10CV195-RLV, 2012 WL 1884485, at *3 (W.D.N.C. May 23, 2012) (unpublished) (internal ellipses omitted); see also Dye v. Astrue, No. 6:09CV95, 2010 WL 1380132, at *3 (S.D.W. Va. Mar. 30, 2010) (unpublished) ("My review of the applicable law has revealed that Luckey . . . [is] still good law in this circuit.").

11

score and could not read. (Tr. 14.) Further, uncontested evidence, including as to Plaintiff's schooling, documents his life-long functional illiteracy. (See Tr. 150-61, 360, 551.)[8] Moreover, consistent with that documentation of childhood intellectual dysfunction, neither the ALJ (see Tr. 14) nor Defendant (see Docket Entry 15 at 6-9) pointed to any evidence suggesting that Plaintiff's IQ dropped to its now-acknowledged retardation-level as a result of events occurring after he turned 22. Accordingly, pursuant to Luckey and contrary to the ALJ's above-quoted ruling, the record does "confirm a long term history of mental retardation" (Tr. 14) and does "support[] onset of mental retardation before age 22" (id.).

---

[8] Of note, Plaintiff's school records reflect that: 1) after kindergarten, he did not advance to first grade, but instead moved to a "Readiness" class (Tr. 150); 2) he received failing grades in every class in second grade (id.); 3) in third grade, he read only at a "pre-primer level" (id.); 4) his third grade standardized test results confirmed his special education status (Tr. 159); 5) in fourth and fifth grades, he continued to read "below grade-level" (Tr. 150); 6) as a 13-year-old, he read at only a third-grade level (Tr. 160); 7) as a 15-year-old, he read at only a fourth-grade level (id.); and 8) his middle school standardized test scores all fell toward the low end of the lowest quintile, with some results in the bottom first percentile (see Tr. 153-56, 158, 161; see also Tr. 33 (setting forth Plaintiff's testimony identifying eighth grade as his final school year completed)). Such poor school performance "is directly material" to Listing 12.05C's Prong 1 requirement of deficits in adaptive functioning during the developmental period. Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012); see also Salmons v. Astrue, Civil No. 5:10-CV195-RLV, 2012 WL 1884485, at *7 (W.D.N.C. May 23, 2012) (unpublished) (recognizing that "functional academic skills" represent primary measure of adaptive functioning before age 22); Smith v. Astrue, C.A. No. 3:10-66-HMH-JRM, 2011 WL 846833, at *2 (D.S.C. March 7, 2011) (unpublished) (holding that documentation of scholastic achievement "substantially below grade level . . . demonstrat[ed] that [the plaintiff] portrayed deficits in adaptive behavior during her developmental period"); Watson v. Astrue, 729 F. Supp. 2d 786, 788 (E.D.N.C. 2010) ("The totality of [the] [p]laintiff's school records indicate that deficits in adaptive functioning manifested before the age of 22.").

Any absence of a formal diagnosis of mental retardation (a factor on which the ALJ relied in ruling against Plaintiff (Tr. 14)) does not defeat Plaintiff's showing as to Prong 1 of Listing 12.05C.  E.g. Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006); Huber v. Astrue, No. CV-10-8043-PCT-DGC, 2011 WL 1004936, at *2 (D. Ariz. Mar. 22, 2011) (unpublished); Davis v. Astrue, No. 7:06CV657(LEK), 2010 WL 2925357, at *4 (N.D.N.Y. July 21, 2010) (unpublished); Woolwine v. Astrue, Civil Action No. 5:09-00575, 2010 WL 3211687, at *9 (S.D.W. Va. July 16, 2010) (unpublished), recommendation adopted, 2010 WL 3211681 (S.D.W. Va. Aug. 12, 2010) (unpublished); Witt v. Barnhart, 446 F. Supp. 2d 886, 894-95 (N.D. Ill. 2006).  Nor, under the circumstances of this case (i.e., proof of low-IQ with no evident post-age-22 cause, life-time illiteracy, and scholastic records consistently chronicling profound functional academic deficiency), would evidence that Plaintiff managed to work for a period of time (as noted by the ALJ (Tr. 14))[9] warrant a finding against Plaintiff on this issue.  See Luckey, 890 F.2d at 669 ("[T]he [Commissioner] may not rely upon previous work history to prove non-disability where the section 12.05(C) criteria are met[.]" (citing Murphy v. Bowen, 810 F.2d 433, 438 (4th Cir. 1987))); Holtsclaw v. Astrue, No. 1:10CV199, 2011 WL 6935499, at *4

---

[9] Plaintiff worked for about five years (ending in March 2006) oiling and re-threading machines in a knitting mill (Tr. 35-37), for the preceding four years cutting grass, picking up trash, and cleaning bathrooms at the clubhouse of a gated community where his brother served as head of maintenance (Tr. 38-40), and for some prior period(s) of time replacing needles in machines in a knitting mill and helping his brother with landscaping jobs (Tr. 40-41).

13

(W.D.N.C. Dec. 30, 2011) (unpublished) (ruling that the plaintiff's "extremely low IQ scores, coupled with her lack of literacy and history of special education, [we]re sufficient to establish the requisite manifestation of deficits in adaptive functioning before the age of 22," notwithstanding evidence of employment, including five years "with earnings exceeding $10,000"); Davis v. Astrue, C/A No. 2:07-1621-JFA-RSC, 2008 WL 1826493, at *4 (D.S.C. April 23, 2008) (unpublished) ("While [the] [p]laintiff had been able to function in a work setting, [L]isting 12.05C anticipates that a plaintiff of limited intellectual ability will be more severely limited, and disabled when faced with other severe impairments.").

As a final matter, neither the ALJ's decision (see Tr. 13-14) nor Defendant's brief (see Docket Entry 15 at 6-9) asserts that other evidence of adaptive functioning offsets Plaintiff's above-discussed Prong 1 showing.[10] That fact distinguishes this case from Hancock, wherein the Fourth Circuit affirmed the ALJ's finding that the plaintiff failed to establish deficits in adaptive functioning based on evidence "that [she] ha[d] the ability to shop, pay bills, and make change; that she takes care of three small grandchildren at a level of care that satisfies the Department of Social

---

[10] In describing Plaintiff's "activities of daily living" in connection with other listings (i.e., Listings 12.04D and 12.05D), the ALJ noted only that Plaintiff "played games, watched movies and went to the park." (Tr. 13.) As part of related analysis, the ALJ also observed that Plaintiff "has a driver's license" (id.); however, the record reflects that he took an oral exam and received assistance from his sister and the test administrator (a woman he knew) (Tr. 34, 360). Plaintiff also testified that he drives only to doctors' appointments and that his sister drives his son to and from school. (Tr. 31.)

14

Services; that she does the majority of her household's chores, including cooking and baking; that she is attending school to obtain a GED; and that she does puzzles for entertainment." Hancock, 667 F.3d at 476. Moreover, any effort to fit this case into Hancock's mold would fail, given other uncontested record evidence, including that Plaintiff depended on others to deal with bills (Tr. 360, 563), that he would need assistance handling any benefits (Tr. 425, 513, 654), and that his minor son largely took care of himself and most household chores (Tr. 46, 48, 572).[11]

## CONCLUSION

The record establishes that Plaintiff met Listing 12.05C and the Court thus should conclude that substantial evidence fails to support the ALJ's contrary decision, as well as that the ALJ employed incorrect legal standards in rendering said ruling. "If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify or reverse

---

[11] During the period in question, Plaintiff and his son lived in a mobile home on land owned by family members, next door to Plaintiff's mother and surrounded by relatives who helped him. (Tr. 30, 31, 34, 539, 549; see also Tr. 531 (noting that Plaintiff relied for some time on live-in girlfriend who left after growing tired of "cover[ing] limitations" related to his impairment(s)).) After examining Plaintiff and reviewing his medical records (see Tr. 567-73), a board-certified forensic psychiatrist with years of service as a Clinical Professor in the Department of Psychiatry at the University of North Carolina School of Medicine (see Tr. 576-79) described Plaintiff's home environment as a "highly supportive living arrangement" and found "an indication of continued need for such an arrangement" (Tr. 574). Accordingly, although Hancock did not identify the types of adaptive functioning cited therein as the minimum that could constitute substantial evidence sufficient to sustain a finding adverse to a claimant on Prong 1 of Listing 12.05C, see Hancock, 667 F.3d at 476, Plaintiff's circumstances reflect such a qualitatively-lower level of adaptive functionality (particularly when viewed in context with the evidence of his illiteracy and incapacity for learning) as to preclude any ruling against him on this issue.

15

the ALJ's ruling 'with or without remanding the cause for a rehearing.'" Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (quoting 42 U.S.C. § 405(g)). As shown in the discussion above, unlike in Radford, this case does not involve significant "ambivalence of the medical record [or] . . . the ALJ's failure to adequately explain his reasoning [in a manner that] precludes this Court . . . from undertaking a 'meaningful review' of the finding that [Plaintiff] did not satisfy [a listing]," id. at 296; rather, undisputed evidence conclusively demonstrates that Plaintiff satisfied Listing 12.05C and that the ALJ's determination that Plaintiff failed to make "a showing of deficits in adaptive functioning initially manifested . . . before age 22 (Prong 1)," Hancock, 667 F.3d at 473 (internal quotation marks omitted), falls short because of a misapplication of law, not any absence of analysis. Under these circumstances, the Court should enter judgment for Plaintiff and should remand only for the purpose of a benefits award, consistent with the approach adopted by other courts in this Circuit in analogous cases, see, e.g., Richardson v. Colvin, No. 8:12CV3507JDA, 2014 WL 793069, at *20 (D.S.C. Feb. 25, 2014) (unpublished); Watson v. Astrue, Civil Action No. CBD-11-2491, 2013 WL 136425, at *7-8 (D. Md. Jan. 9, 2013) (unpublished); Holtsclaw, 2011 WL 6935499, at *6; Davis, 2008 WL 1826493, at *5.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be reversed, that Plaintiff's Motion for

Judgment (Docket Entry 9) be granted, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be denied, and that the matter be remanded for an award of benefits.

                                                /s/ L. Patrick Auld
                                                  **L. Patrick Auld**
                                      **United States Magistrate Judge**

May 19, 2014